UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

THOMAS R. WILLIAMSON,

Petitioner,

v.

MAGGIE MILLER-STOUT,

Respondent.

Case No. C09-5309BHS

ORDER OVERRULING
PETITIONER'S OBJECTIONS
AND ADOPTING REPORT AND
RECOMMENDATION

This matter comes before the Court on the Report and Recommendation of the

Honorable Karen L. Strombom, United States Magistrate Judge (Dkt. 20) and Petitioner's

Objections to the Report and Recommendation (Dkt. 22).

## I. PROCEDURAL HISTORY

On June 16, 2009, Petitioner Thomas R. Williamson filed a Petition for Writ of

Habeas Corpus challenging his state court convictions of first-degree child rape, third-degree

child rape, first-degree child molestation, third-degree child molestation, three counts of

tampering with a witness, and one count of bribery of a witness. Dkt. 4. Petitioner's three

grounds for relief are as follows:

> GROUND ONE: THE STATE VIOLATED MY 5th, 6th, and 14th U.S.
> Constitutional rights by condoning the participation of a biased juror at trial.
> * * *
> GROUND TWO: The state denied my 6th U.S.C.A. right to confront
> states's witness Steve Layton.
> * * *
> GROUND THREE: The state violated my 4th, 5th, 6th, and 14th
> U.S.C.A. rights by obtaining a conviction through the use of perjured
> testimony.

ORDER – 1

*Id*. at 5-9.

On August 6, 2009, Respondent responded and conceded that Petitioner had properly exhausted these three grounds for relief in the state courts. Dkt. 13 at 10.

On August 31, 2009, Petitioner filed a Motion for Evidentiary Hearing (Dkt. 15) and a Motion to Expand the Record (Dkt. 17).

On October 26, 2009, the magistrate judge issued a Report and Recommendation regarding the petition. Dkt. 20. The magistrate judge found that "an evidentiary hearing need not be conducted" because Petitioner's claims involve "issues that may be resolved by this Court with reference to the record before it and as a matter of law." *Id*. at 6. With regard to Petitioner's first ground, the magistrate judge recommended that it be denied because the state court decision was not "contrary to, or an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court." *Id*. at 11. With regard to Petitioner's second ground, the magistrate judge recommended that it be denied because Petitioner "has no basis for his contention that his right to confrontation was violated . . . ." *Id*. at 16. With regard to Petitioner's third ground, the magistrate judge recommended that the claim be denied. *Id*. at 16-18.

On October 28, 2009, the magistrate judge denied Petitioner's Motion for an Evidentiary Hearing and Motion to Expand the Record.

On November 12, 2009, Petitioner filed objections to the Report and Recommendation. Dkt. 22.

## II. FACTUAL BACKGROUND

The Washington Court of Appeals summarized the facts and the procedural posture of Petitioner's case as follows:

> During the four years he lived with MK and her mother, Thomas Williamson forced MK to engage in sexual acts with him and others. The conduct, which included improper touching and fellatio, started in 1998, when MK was six years old, and continued until a month before she was put into foster care in April 2001.

ORDER – 2

Sixteen-year-old DR often spent time at the Williamson residence. He testified that from 1999 until April 2001, Williamson sexually abused both him and MK almost every weekend. The incidents included fellatio and anal intercourse. Williamson also masturbated while DR had fellatio with MK, and Williamson had fellatio with MK more than twelve times.

The State charged Williamson with four counts of child rape, two counts of child molestation, two counts of furnishing alcohol to a minor, four counts of witness tampering, and one count of bribing a witness.

Before the trial, Williamson met DR at a local motel. He spoke to DR about changing his story and then drove DR to his attorney's office to recant. Although DR did recant, he later decided to testify about the sexual conduct.

A month before trial, Williamson again met with DR and took him for a drive to Mt. Angeles. During the drive, Williamson asked DR to recant his allegations of sexual abuse. Williamson offered to give DR a share of his marital property after his dissolution if he would do so. Williamson also asked DR to contact MK and tell her that her mother and father would go to jail if she did not take back her statement. After the drive to Mt. Angeles, Williamson again drove DR to his attorney's office to recant. After DR failed to go into the attorney's office, Williamson called DR and continued to urge him to recant. DR never contacted MK about recanting.

Williamson denied any inappropriate contact with MK or DR. He admitted contacting DR before trial, but claimed he had asked him only to be honest.

Near the end of Williamson's trial, his attorney learned that a juror had allegedly discussed the case with co-workers and had already concluded that Williamson was guilty. Williamson's attorney explained to the trial judge that she and her secretary were at a bar when a woman told them she had overheard one of the jurors say Williamson should be hung. The attorney did not know the woman's name, but gave the judge a physical description of her.

The trial judge first proposed making the juror the alternate, but when Williamson's attorney continued to object, the judge excused the juror and replaced her with an alternate. Before excusing the juror, the judge asked her if she talked with other jurors about the case. The juror said she had not. The trial court rejected Williamson's request to question other jurors about whether the juror had discussed the case, given her opinion about Williamson's guilt, or discussed any other improper matters with the other jurors. The trial court also denied Williamson's motion for a mistrial.

The jury convicted Williamson of first degree child rape (count 1), third degree child rape (count 2), first degree child molestation (count 3), third degree child molestation (count 4), three counts of tampering with a witness (counts 10-12), and bribing a witness (count 13). Calculating Williamson's offender score at 13, the judge imposed a 340-month exceptional sentence for the first degree child rape (MK) with shorter, concurrent sentences on the other counts.

Dkt. 14, Exh. 7, Part Published Opinion, *State v. Williamson*, Washington Court of Appeals Cause No. 29178-9-II ("WCOA Opinion"), at 1-3.

## III. DISCUSSION

A petitioner may file objections to a magistrate judge's findings and recommendations regarding the petition for writ of habeas corpus. Fed. R. Civ. P. 72(b). Once objections are filed, the

> district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id*. In this case, the Court finds that Petitioner has properly objected to the magistrate judge's disposition on all three of Petitioner's claims for relief. Therefore, the Court will conduct a de novo review of the Report and Recommendation, the petition, and the remainder of the record.

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983). Pursuant to the federal habeas statute for state convictions, a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." 28 U.S.C. § 2254(a). The Supreme Court has repeatedly held that federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established the district court's standard of review of the state court's decision. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). That standard is as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

ORDER – 4

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254.

Under the first prong of Section 2254(d)(1), a state court decision is "contrary to" federal law if the state court applies a rule that contradicts the governing law as stated by the Supreme Court or reaches a different conclusion than that reached by the high court on materially indistinguishable facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). This includes "mistakes in reasoning" or "use of the wrong legal rule or framework." *Frantz v. Hazey*, 513 F.3d 1002, 1012 (9th Cir. 2008) (en banc).

The second prong of Section 2254(d)(1) is met when a state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies it to the facts of a petitioner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). The "unreasonable application" inquiry is an objective one, and the standard is not satisfied simply by showing error or incorrect application of the governing federal law. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam); *Williams*, 529 U.S. at 409. "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

Section 2254(d)(2) applies when an "intrinsic review" of the state court's fact-finding process is implicated, i.e., "where petitioner challenges the state court's findings based entirely on the state record." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004); *see also Weaver v. Palmateer*, 455 F.3d 958, 963 n. 6 (9th Cir. 2006). A federal habeas court may not grant relief under Section 2254(d)(2) unless "it determines that the state court was not merely wrong, but actually unreasonable." *Maddox*, 366 F.3d at 999.

ORDER – 5

The Ninth Circuit has summarized the layers of review mandated by AEDPA as follows:

> First, challenges to purely factual questions resolved by the state court are reviewed under § 2254(d)(2); the question on review is whether an appellate panel, applying the normal standards of appellate review, could reasonably conclude that the finding is supported by the record.
> [¶] Second, fact-based challenges founded on evidence raised for the first time in federal court are reviewed under § 2254(e)(1); the question on review is whether the new evidence amounts to clear and convincing proof sufficient to overcome the presumption of correctness given the state court's factual findings.
> [¶] Third, challenges to purely legal questions resolved by the extant state court are reviewed under § 2254(d)(1); the question on review is (a) whether the state court's decision contradicts a holding of the Supreme Court or reaches a different result on a set of facts materially indistinguishable from those at issue in a decision of the Supreme Court; or (b) whether the state court, after identifying the correct governing Supreme Court holding, then unreasonably applied that principle to the facts of the prisoner's case.
> [¶] And, fourth, challenges to mixed questions of law and fact receive similarly mixed review; the state court's ultimate conclusion is reviewed under § 2254(d)(1), but its underlying factual findings supporting that conclusion are clothed with all of the deferential protection ordinarily afforded factual findings under §§ 2254(d)(2) and (e)(1).

*Lambert v. Blodgett*, 393 F.3d 943, 977-978 (9th Cir. 2004). With these standards in mind, the Court turns to Petitioner's three grounds for relief.

**A.     Ground One – Juror Misconduct**

In this case, Petitioner claims that the state trial court erred in not declaring a mistrial after it dismissed a juror who made a biased comment about the defendant to a co-worker who was not a member of the jury. Dkt. 4, pp. 13-14. Petitioner also argues that the trial court refused to allow him to discover and preserve evidence regarding the biased juror and/or juror misconduct. *Id.*, p. 14. The Court finds that this ground presents challenges to both the state court's factual finding and the state court's ultimate conclusion.

With regard to the factual aspect of this ground for relief, the Washington Court of Appeals opined as follows:

> Williamson asserts that even though he presented no affidavit from the woman in the bar, the trial court assumed that the information about the alleged juror misconduct was true. Williamson points to a discussion in chambers between the trial judge and the attorneys. When the court said there was an allegation that "she came on the jury with the idea she already made up

ORDER – 6

> her mind," the deputy prosecutor interjected, "We don't know that." RP (4/02/02) at 627. The court responded, "But that is the presumption." RP (4/02/02) at 627. Yet later the judge said in referring to the allegation "[y]ou don't know that and there is no indication she talked to the other jurors." RP (4/02/02) at 630. And still later when the judge called the juror in, he explained the accusation and said "[w]e don't know if that's true or not." RP (4/02/02) at 636. Thus, considering the entire record, we disagree that the trial judge assumed the misconduct had occurred.
>
> Williamson has the burden of proving misconduct. Other than defense counsel's report, he presented no evidence of misconduct. In fact, when the trial court called the juror in, she denied talking to other jurors and tried to explain, "I haven't talked to anybody other than to say it's long." RP (4/02/02) at 637.

WCOA Opinion at 6-7.[1] The Court finds that this was not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(2), because there was *no* evidence that the dismissed juror, Juror #10, communicated with or tainted any of the other jurors.

Petitioner's arguments and objections to the contrary rely on pure speculation. For example, Petitioner argues that, because Juror #10 was described as a loud and boisterous woman,

> how should we assume that [Juror #10] would become a different woman on the jury when she routinely exhibited this strongly outspoken personality characteristic(s) during the approximately 45+ hours which she had a full and unobstructed opportunity to taint the other hopefully unbiased jurors. It would seem a much more likely assumption to believe that she surely did communicate her bias against the defendant to one or more of the other eleven jurors, than to have the expectation that she did not do so.

Dkt. 22 at 5. The Court may not accept "more likely assumptions" and Petitioner's argument is contrary to the juror's own admission that she had not talked to any other juror. Therefore, Petitioner's challenges to the factual findings of the state court are without merit and he has failed to meet his burden under 28 U.S.C. § 2254(d)(2).

The Washington Court of Appeals ultimately concluded that Petitioner had failed to meet his burden of proving misconduct and that the "trial judge did not abuse his discretion in denying the motion for a mistrial." WCOA Opinion at 7. The magistrate judge found that

---

[1] "RP" refers to the state trial court transcript, which is Dkt. 14, Exh. 21.

ORDER – 7

the WCOA Opinion was not "contrary to, or an unreasonable application of, clearly

established federal law, as determined by the U.S. Supreme Court." Dkt. 20 at 11.

Petitioner objects to this finding and argues that, under *Remmer v. U.S.*, 347 U.S. 227

(1954), he should have been allowed the "opportunity to establish actual bias." However,

Petitioner fails to recognize that there is *no* evidence that any other juror was tainted or

biased. The state trial judge quickly dismissed the allegedly biased juror and the

Washington Court of Appeals concluded that it was not an abuse of discretion to either deny

Petitioner a new trial or deny Petitioner an opportunity to question the remaining jurors. The

Court overrules Petitioner's objection on this issue and adopts the magistrate judge's Report

and Recommendation on this ground for relief.

Therefore, the Court denies Petitioner's writ for federal habeas relief on ground one,

juror misconduct.

**B.    Ground Two – Confrontation**

In the Report and Recommendation, the magistrate judge summarizes Petitioner's

second ground for relief as follows:

> Mr. Williamson argues that his right to confrontation was violated
> when he was denied the right to confront S.L. Dkt. 5, pp. 26-32. Mr.
> Williamson argues that the trial judge improperly allowed the admission of
> testimonial statements of S.L. through the testimony of D.R. *Id.*, pp. 27-28.
> Respondent argues that Mr. Williamson's right to confrontation was not
> violated when he was denied the right to confront S.L. because S.L. was not a
> witness at trial. In addition, after D.R. testified about the incident with S.L.,
> Mr. Williamson's counsel crossexamined him about it. *Id.*, Exh. 20, pp. 152,
> 154, 171, 259.

Dkt. 20 at 12. The Court finds that, on this ground for relief, Petitioner does not challenge

factual questions of the state court proceeding. Although Petitioner asserts that the state trial

court allowed "testimonial statements" of S.L., who was not a witness at trial, Petitioner fails

to identify what "testimonial statements" were admitted. After a review of the state court

record (Dkt. 14, Exh. 20), the Court finds that Petitioner's assertion is without merit.

Therefore, the Court denies Petitioner habeas relief under 28 U.S.C. § 2254(d)(2) because

the state court decision was not based on an unreasonable determination of the facts in light of the evidence presented.

With regard to the state court's ultimate conclusion, the magistrate judge found that Petitioner "has no basis for his contention that his right to confrontation was violated . . . ." Dkt. 20 at 16. The Court agrees with and adopts this finding because Petitioner has failed to show that he has a right to confront a person mentioned by a witness. Petitioner may have a right to confront a person who makes an out-of-court statement when that statement is admitted into evidence. *See, Ohio v. Roberts*, 448 U.S. 56 (1980).[2] This, however, is not the issue before the Court. On the issue that Petitioner has presented to the Court, the state court decision regarding Petitioner's right to confrontation was neither contrary to, nor involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

Therefore, the Court denies Petitioner's writ for federal habeas relief on ground two, right to confrontation.

## C. Ground Three – Perjured Testimony

In the Report and Recommendation, the magistrate judge summarizes Petitioner's third ground for relief as follows:

> Mr. Williamson argues that his constitutional rights were violated because his conviction was obtained through the perjured testimony of D.R. Dkt. 5, pp. 36-37; Dkt. 6, p. 18. Mr. Williamson contends that D.R. admitted to providing perjured statements regarding S.L. to the police. Dkt. 6, p. 18. Respondent argues that there is no United States Supreme Court precedent that would hold a criminal defendant's constitutional rights are violated when a witness admitted he lied to the police in his earlier statements before trial, the witness was cross-examined by the defense, and the state introduced no perjured evidence at trial. Dkt. 13, p. 17. In addition, Respondent argues that Mr. Williamson was not convicted based on the statements obtained before trial, but on the evidence presented during trial. *Id.*, p. 18.

Dkt. 20 at 16.

---

[2] The current Supreme Court precedent on this issue is *Crawford v. Washington*, 541 U.S. 36 (2004). The magistrate judge, however, concluded that this case does not apply retroactively. *See* Dkt. 20 at 13-14.

ORDER – 9

The Washington Court of Appeals opinion on this issue reads as follows:

First, Williamson argues that his convictions must be set aside because DR committed perjury. He asserts, "[a] conviction must be set aside if obtained by the knowing use of perjured testimony if there is any reasonable likely hood [sic] that the false testimony affected the outcome of the trial." Pro Se Stmt. of Add'l Grounds for Review (Pro Se Stmt.) at 1 (citing *United States v. Polizzi*, 801 F.2d 1543 (9th Cir. 1986) and *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 3382, 84 L. Ed. 2d 481 (1985)). Williamson also argues that the State's negligent investigation resulted in false information and "an erroneous trial and conviction." Pro Se Stmt. at 4.

A conviction obtained through the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is a reasonable likelihood that the false testimony affected the jury's judgment. *In re Personal Restraint of Benn*, 134 Wn.2d 868, 936-37, 952 P.2d 116 (1998) (citing *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L. Ed. 2d 342 (1976)).

Although DR admitted that he made false statements under oath, there is no evidence that the State knowingly introduced perjured testimony. Nor does the record support Williamson's claim that the State's negligent investigation produced false information. And we do not consider matters outside the record on direct appeal. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995) (citations omitted).

WCOA Opinion at 9-10.

In the Report and Recommendation, the magistrate judge found as follows:

Mr. Williamson argues that the state was improperly allowed to utilize D.R.'s prior statements, that the court made rulings based exclusively on D.R.'s admitted perjured testimony. Dkt. 6, p. 20. A review of the transcript, however, reveals that portions of the witness's prior statements were used to refresh his memory and to impeach him during cross-examination, when he admitted that portions of his prior statements were untrue. See, e.g., Dkt. 14, Exh. 19, p. 122; Exh. 20, pp. 138, 143, 157, 179, 183, 243, and 257. Furthermore, there is no evidence in this case that the State knowingly introduced perjury.

Dkt. 20 at 17-18.

Petitioner objects to the magistrate judge's "concurrence with the state [Court of Appeals] that there was no evidence in this case that the state knowingly introduced perjury. . . ." Dkt. 22 at 10. Petitioner alleges as follows:

I have shown repeatedly that D.R. testified in trial on cross and recross that he had committed perjury on almost every pre-trial police statements, which he signed under the penalty of perjury under the laws of the state of Washington. The core trial records which show this I outline in detail in the Petitioner's Addendum, pages 32-36. Therefore, for the prosecutor and the trial judge to repeatedly utilize these documents by D.R. which during this trial D.R. already had testified to as being perjured police statements, and both the prosecutor and the trial judge were present when D.R. testified to this in front of the jury, then

> here, in plain sight, exists unequivocal proof positive that in fact these state actors did knowingly introduce perjury. So, we may clearly see from the record itself, not something I've made up, (1) that they knew beyond a shadow of a doubt that they were knowingly interacting with perjury provided pre-trial by D.R., and (2) that the state intentionally entered this perjury knowingly to gain a conviction because of the inherent poor quality of the state's witness D.R. . . . .
>
> I very strongly object to the Magistrate not addressing, ignoring, and intentionally omitting, my citations to the record on this issue, which clearly depict the state and the trial judge utilizing testimony they each fully knew was perjured. This fact, by necessity, should more than negate the holding of the Magistrate upon this issue.

Dkt. 22 at 10-12. Petitioner then directs the Court's attention to specific pages in the state court record where he alleges that the state knowingly introduced perjured testimony through D.R. *Id.* at 12-14. The problem with Petitioner's argument lies in the difference between introducing inconsistent evidence and knowingly introducing perjured evidence. *See, e.g., United States v. Holladay*, 566 F.2d 1018, 1019 (5th Cir.) ("Presentation of a witness who recants or contradicts his prior testimony is not to be confused with eliciting perjury."), *reh'g denied*, 573 F.2d 1309 (5th Cir.), *cert. denied*, 439 U.S. 831 (1978).

Mere inconsistencies in testimony do not establish knowing use of perjured testimony. *United States v. Sherlock*, 962 F.2d 1349, 1364 (9th Cir. 1992). Contradictions and changes in a witness's testimony alone do not constitute perjury and do not create an inference that the prosecution knowingly used perjured testimony. *Tapia v. Tansy*, 926 F.2d 1554 (10th Cir. 1990). The standard for evaluating perjured testimony is the reasonable likelihood that false testimony could have affected the jury. *United States v. Endicott*, 869 F.2d 452 (9th Cir. 1989); *United States v. Agurs*, 427 U.S. 97, 103 (1976); *Giglio v. United States*, 405 U.S. 150, 154 (1972).

On appeal, the Washington Court of Appeals found that "[a]lthough DR admitted that he made false statements under oath, there is no evidence that the State knowingly introduced perjured testimony." WCOA Opinion, at 10. This finding is not an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2). On direct examination, the state elicited testimony from D.R. regarding the allegations supporting the charges as well as the multiple meetings that D.R.

had with Deputy Dunn.  *See* Dkt. 14, Exh. 19 at 65-100.  On cross examination, defense counsel attempted to impeach D.R.  *Id*. at 127.  Defense counsel showed D.R. an exhibit, which was a written statement that D.R. had given to Deputy Dunn.  *Id*. at 127-128.  On re-direct, the prosecutor directed D.R. to read a portion of that statement to the jury.  Dkt. 14, Exh 20 at 242-243.  The prosecutor also read aloud a portion of another statement that D.R. had given to Deputy Dunn.  *Id*. at 246.  The jury was immediately excused and defense counsel moved for a mistrial (*id*.) and the judge denied the motion (*id*. at 247).  The record does not reflect that this motion for a mistrial was based on the introduction of perjured testimony.  Moreover, Petitioner has failed to show that the evidence was more than an inconsistency or a contradiction in D.R.'s testimony.  Therefore, the Court finds that Petitioner has failed to meet his burden for relief under 28 U.S.C. § 2254(d)(2) because there is no evidence that the state knowingly introduced perjured testimony.

Petitioner has also failed to meet his burden regarding the state court's ultimate conclusion.  The state court held that Petitioner's constitutional rights were not violated because there was no evidence that the state knowingly introduced perjured testimony.  WCOA Opinion at 9-10.  The Supreme Court has held that the knowing use of false or perjured testimony against a defendant to obtain a conviction is unconstitutional.  *Napue v. Illinois*, 360 U.S. 264 (1959).  In order to obtain habeas relief based upon use of false or perjured testimony, a petitioner must demonstrate that (1) the witness made a false statement; (2) that the false statement was material; and (3) that the false statement was knowingly and intentionally employed by the government in order to obtain a conviction.  *McBride v. United States*, 446 F.2d 229, 232 (10th Cir. 1971); *Williams v. Griswald*, 743 F.2d 1533 (11th Cir. 1984).  Petitioner has failed to meet his burden that the state court adjudication was contrary to, or an unreasonable application of, this clearly established federal law because there is no evidence that the state introduced a material false statement or that it did so knowingly and intentionally.

ORDER – 12

Therefore, the Court denies Petitioner's writ for federal habeas relief on ground three, perjured testimony.

## IV. ORDER

The Court having considered the Report and Recommendation, Petitioner's objections, and the remaining record, does hereby find and order:

(1)     The Court **OVERRULES** Petitioner's Objections;

(2)     The Court adopts the Report and Recommendation; and

(3)     This action is **DISMISSED**.

DATED this 5th day of January, 2009.


_____
BENJAMIN H. SETTLE
United States District Judge

ORDER – 13